I think that means I'm supposed to step up here, Your Honor. It's your case. Go ahead. Thank you, Your Honors. Good afternoon. I'm William Cohan, and I'm here on behalf of 70,000 people, give or take, including Daniel Anderson and Lorenzo Lamantia. And we're here because of the seizure of the names, addresses, telephone numbers, and other identifying information. Mr. Cohan, perhaps you could tell us what the status is of the ongoing investigation. Is there still a grand jury hearing testimony in this case, or do you know? To the best of my knowledge and belief, there is no grand jury hearing any evidence in this case, although I'm not exactly in the inner loop in that regard. However, it's been 30 months, or 29 and a half months, since the raids at the Lamantia and Anderson residence. For a period of time, I would occasionally be contacted by somebody who was subpoenaed a testify before that grand jury, and it's been many months. So there has been at some point in the past, as far as you know, active grand jury proceedings. At least subpoenas were being issued for witnesses and documents. Without doubt, subpoenas were issued for witnesses, Your Honor. But that's been, as I say, many months ago. How many? The last I heard would have been December last year, January this year, and even that was based on some delays for people who had health problems and other problems who were originally subpoenaed in the latter part of 2002. So here we are, 30 months down the road. We're still anxious to see these search warrant affidavits that are still concealed. And, of course, in California, the Court may not know this, but in California, one was obligated to file suit within one year of the search and seizure. So we had to file a note later in February the 28th of 2002. The trial court indicated that the case should be dismissed, even though we never saw anything to substantiate the claim that there was probable cause. And if I may, I'd like to invite the panel's attention to pages 37 and 38 of the government's brief that I reread recently, and I noticed that the government on page 38 referred to the Mendocino case. And in that case, the government said, quote, plaintiffs alleged that the law enforcement agents had included false information in the search warrant affidavits, a claim that appellants do not make here. Well, of course we don't make that claim here because we still haven't seen the search warrant affidavits. But what, in my view, makes this a pretty easy case is the authorization for the seizure of even prospective members' names. We've never been told how there could possibly be probable cause to believe that the name of prospective members could constitute fruits, instruments, or instrumentalities of tax crimes. And I don't understand it. The concealment of the evidence from the plaintiffs' appellants here, on the basis of which the district court resolved the case by summary judgment, unprecedented. We have these venerable inst- I'm sorry, you were going to- No, I was just going to ask you a question, Mr. Cohen. Would you clarify for us what relief are you now seeking? Are you still seeking injunctive relief? We already are. Okay. And can you tell us how you can avoid the application of the law of the case doctrine since a panel of this court previously denied relief that you sought to seek injunctive relief in the case? My understanding of the decision in that case, Your Honors, was simply that the court held it didn't have any jurisdiction to entertain an interlocutory appeal. Okay. Then what's changed? Because it seems to me that this is still interlocutory in the sense that your injunctive relief action sought a restraint on an ongoing tax investigation. Are you still seeking that relief, or have you abandoned that claim for relief? Well, you've just given me a whole bunch of things to address there, so I'll try and do that. First of all- I'll start by answering the first question, which is, are you still seeking to enjoin an ongoing tax investigation? The answer to that question is we have never sought to enjoin an ongoing tax investigation, Your Honor. That is a misstatement of our position by the government. We have only sought to enjoin the use of the membership information that was not legally sought, and we've never heard how that membership information has anything to do with the criminal tax investigation directed at Mr. Anderson and Mr. LaMattea. That's the first big problem, logically, with the government's position. And the next position that we have a problem with is there's nothing interlocutory here because our complaint has been dismissed. Now, in terms of the criminal case, we don't know that there's ever going to be an indictment. It's been two and a half years. Of course, they have five, right? So the statute of limitations has not yet run. Actually, they have six. Oh, six, that's right. But that doesn't help 70,000 people unless this Court would reverse and remand and do at least what the district judge did for the lawyers. His offices were also raided and say, well, we'll stay this case until the issues that somehow justify continued concealment of the affidavit or affidavits are resolved. So that plaintiffs can see whether they can or can't state a claim that, indeed, the searches and seizures and the warrants exceed the breadth of the probable cause. Mr. Cohen, I'm a little bit puzzled. What I hear you say is that you want an injunction to restrain the government from using certain evidence, i.e., the membership list, in their investigation. And how does that differ from enjoining an ongoing investigation if you are going to deny the investigators evidence that may or may not be relevant? We can't tell because we don't know what the charges are at this point. But let's assume for the sake of argument that those lists are somehow relevant without regard to the First Amendment issue. And I don't understand why that doesn't constitute injunctive relief against the government to prevent them from doing something in their investigation. The problem I have, Your Honor, is with your assumption and with the fact that there's absolutely nothing to support the assumption. Nothing, zero, a complete void. The government has never even contended. And, in fact, they can't really contend that the membership information is relevant to the criminal investigation because, instead, they took what seems to me to be the mutually exclusive path of claiming that they're entitled to get us out of court based on the Anti-Injunction Act, alleging that the membership information is something that they can use to collect taxes, which is what brings in the Anti-Injunction Act. When we cited the dispositive Supreme Court authority of Sells and Baggett, the government never even mentioned those cases. And then in a footnote said, well, we could do some civil investigative work directed at the membership. But there's never been any suggestion that the membership information was relevant to any of the charges. And Your Honor said, we don't know what the charges are, but actually we do know what the charges were in terms of the probable cause that supposedly supported the search warrant here, and those charges are in the warrant. We haven't seen the search warrant. We've seen the affidavit. We've seen the search warrant. And the search warrant speaks of gathering evidence in support of a variety of tax offenses, including conspiracy, does it not? It does. Okay. So why wouldn't it be relevant in a conspiracy investigation to know who the members of the conspiracy are? Well, if Your Honor is suggesting what the government never deigned to even intimate, which is that this conspiracy numbers about 70,000 people, then I guess that would be relevant evidence. That would certainly be a long trial, Your Honor, just having all the people plead not guilty. 70,000 is gone. Well, but there's no suggestion that all these 70,000 are suspected of being involved in the conspiracy. That is a position the government has never taken. And that would, again, completely contradict the whole point that the government has made with respect to the Anti-Injunction Act, which is that the raids were somehow in aid of civil collection. This is a totally untenable position, Your Honor, because that is specifically what the Supreme Court said the government was prohibited from doing, that the government could not use the grand jury investigative process to gather information for civil assessment, collection, and investigation. And that's why the government sort of backed away from that and didn't even try to distinguish the case. Could I ask you on the prospective members, how are you in a position to represent the interests of prospective members? Just that they have the right not to have their names disclosed. How do you have any position in their regards, since they're not members of the organization? How have they authorized you to represent that interest? Only by contacting Mr. Anderson, Your Honor, to obtain information about the Institute of Global Prosperity. But they're non-members, and you say yet you can come and represent their interests. I don't quite get it. Well, the reason why I suggest that I can, Your Honor, and in fact insist that I can, is that obviously they can't protect their own interest to anonymity by naming themselves and then claiming their right to anonymity. Therefore, the question is, do they have any rights to anonymity or don't they? They have expressed an interest in the materials disseminated, and to protect their right to associate anonymously, I have to step forward to do that. And no one has contacted me anonymously or otherwise and said, you don't represent my interest in protecting my anonymity. I don't want to announce who I am. Have you told them you're representing them? Well, it's been widely distributed to people associated with the organization, Your Honor. We have not contacted each of the 70,000 people, but the vast majority. What's your perspective on how many actual? I can't tell you that number, Your Honor. 70,000 is a global figure that includes prospects and actual members? Literally a global figure, Your Honor. Forgive the pun. It's the Institute of Global Prosperity. But the number of people who have acquired materials and become members is nearly 70,000, so that the prospective members would be, I'm sure, less than 5% of that total number. But the government has seized the membership information and they could presumably give you the numbers exactly. I really am waiting to hear the government defend some positions that I think are indefensible. Would you like to reserve the record? I would if I might, unless there are more questions from any of Your Honors. I think not, Mr. Cohen. Thank you. Thank you very much. Ms. Wolfinger. Good afternoon, Your Honors. My name is Gretchen Wolfinger. I represent the appellees in this case, which are the United States of America, as well as the individual named defendants. There are two groups of issues in this case, the Anti-Injunction Act issue, as well as the Bivens issues, and I'd like to address the Anti-Injunction Act issues first. As you correctly recognized, Judge Tallman, the district court's denial of permanent injunctive relief is a non-appealable order pursuant to the law of the case, which is what this court decided in the previous opinion in the case, which I'll refer to as Anderson 1. In that case, they held that the denial of preliminary injunctive relief was non-appealable, and here, although it is the denial of permanent injunctive relief that is before the court, the facts are similar and the legal principles are certainly the same. So this court should not have jurisdiction over that denial of permanent injunctive relief pursuant to Anderson 1. It seems to me that there is a difference. I mean, the district court has now dismissed, with presumably prejudice, the underlying lawsuit through which injunctive relief was sought. So I guess my question for you is, if not now, when would the plaintiffs ever be able to challenge the district court's refusal to enter injunctive relief? The court answered that question, I believe, in Anderson 1. It did not specifically discuss it in terms of injunctive relief. It discussed it in terms of a resolution of the absolute issue that is a challenge to the seizure of the membership information. And they said that would be, there would be jurisdiction over that issue in the context of final action, in the context of a criminal conviction or otherwise. So if the case proceeds to a criminal proceeding charges, it would be resolved at that point. What if it never proceeds to criminal charges? If it doesn't proceed to criminal charges, that information would be returned to the plaintiff, which is what they're seeking, the return of the information. They would get their relief either way. But would they be able to pursue a cause of action in 1983? That for? So you're saying if the property is returned, would their lawsuit become moot, in your view, at that point? Yes, it was. Yes, it would. The relief that they're seeking is the return of the information, and they would get that if there were no criminal charges. The information would be returned to them, and the government would not use it, nor would the government have a need to use it. So the plaintiffs in this case then are relegated to relying upon the determination of the government as to whether or not to return the property? So it's up to the government. So the government has to decide whether or not to return the property, you're saying? No, I believe if charges are brought, their issues can be addressed by a suppression motion. If charges are not brought and the property is not returned, the plaintiffs could at that point ask for the return of the property. I guess the thing that's troubling me is six years from what date? I mean, we're all familiar with the fact that in a conspiracy case, the statute of limitation does not begin to run until the last overt act and furtherance of the conspiracy. So it isn't going to be necessarily six years from the date that the search warrants were executed. So to follow up on Judge Rawlinson's question, when are these people ever going to have any assurance that the investigation is truly over if the government declines prosecution in the case and brings no charges? Presumably at some point within the six years, they could begin asking, and it could be that the government, if they don't bring charges, would return the information of their own accord, and the plaintiffs would at that time know. But six years from when, Ms. Wolfinger, that's what I'm struggling with. And I believe your theory is correct that it's six years from the final act of the conspiracy. But I believe that the panel took that into consideration in Anderson 1 in their ruling when they said because this is, in ESSA, a criminal prosecution, and it's in fact but the first step in a criminal case, that they are deferring to the resolution of the criminal case in order to address the plaintiff's issues. Go right ahead. But the panel didn't address the eventuality that there is no criminal prosecution. But I believe that that's standard Rule 41E law, and that's what should occur. If there's no prosecution, the government would not have a reason, presumably, to keep that information and should return it. And there has been no Rule 41E motion filed in this case? I thought we treated it as if it were the equivalent of it. But it's during the pendency of a criminal investigation. All right. And recognizing that we're dealing with a grand jury investigation, what can you tell us about what the status is of the ongoing investigation? I have to make it very clear to the panel that I have to follow the rule. We understand Rule 6E. That there is an assumed grand jury investigation from the perspective of the government. I can tell you that I contacted the prosecutors, and according to them, in connection with the investigation of Global, there have been approximately 16 people who have been indicted, convicted, or have pled guilty. So there has been progress in connection with the investigation, although apparently, according to Mr. Cohan, he stated that there has not been any progress with regard to his particular name. Counsel, would you please address the arguments made by opposing counsel regarding the prospective members? In what regard, Your Honor? Well, his viewpoint is that there could be absolutely no relevance to any criminal investigation of the names of prospective members. What is your response? I can't discuss that on the public record in an open courtroom. I would refer to you the material that's been submitted to the district court in camera and under seal, which the district court reviewed and which the government believes establishes more than sufficient evidence that there was probable cause for the seizure of membership information. How would you ñ how do you define prospective members for purposes of this case? I don't know that I do, Your Honor. That's a distinction that Mr. Cohan is making. I believe that the warrants in this case talk about membership information, and I don't know that they made a distinct distinction between actual and prospective. I would also note that if this court does not find, or does find that it has jurisdiction to review the denial of permanent injunctive relief, that relief would be barred under the Anti-Injunction Act. The Anti-Injunction Act is interpreted very broadly to address or to bar any activities which would interfere with the intended culmination of the collection of or assessment of taxes in this case. And although Mr. Cohan has raised the specter of baggot and cells, that is not the case here at all. It's clear that were criminal charges to be brought, that a civil case for collection of taxes could trail the criminal case and not implicate cells and baggot. It's also clear that a civil case could arise based on independent evidence unrelated to the criminal investigation. And finally, if the court finds that the Anti-Injunction Act does not bar the relief, then we would maintain on the merits that appellants are not entitled to permanent injunctive relief. With regard to the Bivens issues, plaintiffs allege that the agents violated their First and Fourth Amendment rights by seizing IGP membership information. However, this information was seized pursuant to valid warrants. I don't believe that there's any question that warrants can authorize the seizure of material protected by the First Amendment. And here the agents did seize the membership information pursuant to valid warrants. Could you direct me to the paragraph of the search warrant that the government believes authorizes the seizure of membership? I'll help you a little bit. In the briefing, I thought that there was reference to paragraph 21, which appears at excerpt of record 41. I'm not trying to suggest the answer, but I read other portions of the warrant and wondered whether that was the government's position. Well, certainly I think that we referenced excerpt of record 40, paragraph 18, to be seized are applications for membership, membership cards, membership agreements. That was what caught my eye when I read the affidavit, which is why – or the warrant itself, which is why I asked the question. So you're saying it's more than just 21, which apparently the assistant U.S. attorney had discussed with the case agent, according to the brief? No, no, Your Honor. I believe you're confusing two issues. I'm looking at excerpt of record 41. Paragraph 21 pertains to tax records, and that's a whole, I believe, separate issue. Okay, maybe I'm confused there from reading the record. I understood that at some point during the search, one of your searching agents had a conversation with the assistant U.S. attorney about whether or not they could seize certain things pursuant to the warrant. Yes. Did that deal with membership lists, or was it something else? No, I believe for purposes of the discussion that may go on here, plaintiffs have referred to it as anti-tax literature, books and things, and that's what pertains to paragraph 21 of that warrant. Now, I can reference you to other portions of the search warrants at issue here, but that would be our general position there. I would refer you to ER 109, ER 120, ER 139 contains similar language about membership. Can I ask you a question about the claim of excessive force? The agents come to someone's home and point a gun at the homeowner as he comes to the door? Would that be excessive force? Sounds like it. Well, not in this context, Your Honor. It wasn't just an agent coming to the door of someone's home. It was an agent coming to the door of someone's home to execute a search warrant with the agent having knowledge of forehand that the person answering the door could be very muscular. Well, muscular doesn't mean he's going to be packing a gun, does it? No, but it may mean it was a female agent who was first at the door. It may mean that he had sufficient physical strength to overcome her or to put her. Well, let me tell you, if you don't have enough force to meet someone, it doesn't give you the right to come to a homeowner's door and point a gun at him. Well, I think you could. If they thought this person was so feeble that she couldn't do it, they should have sent somebody else. I mean, it seems to me quite a clear factual question. Was there excessive force? I don't know how I or you can say without a jury. I think we can because the facts here are basically undisputed. She pointed a gun at his face for 10 to 20 seconds while executing the warrant, having him come to the door, having him come to the door with an unknown object in his hand. Once that object was identified. You say he had an unknown object. If I get the facts and maybe I'm incorrect, she has the gun out. You say she anticipates because he's muscular that she'll need to confront him. She must have had the gun out, right? Yes, she did. So it wasn't the object in his hand. She was confronting the owner of the house on his premises with a gun. No, I think. Wasn't that fact the fact? I think with all due respect, Your Honor, what we're doing is what the Supreme Court has said we should not do, which is looking at the facts in hindsight. No, I'm looking at it in foresight. You speak. What is it like to be confronted in your home by a person pointing a gun at you? It's pretty shocking to me. It's certainly very shocking. But the agents who were executing the warrant were entitled to anticipate that there could be a problem. Why were they anticipating? Did they have any record of violence by this man? There's no record of violence, although I indicated before that he was a muscular. What do you mean by a muscular man? I don't know. I think that's the sort of thing a jury might be interested in hearing. But I don't think we need a jury to resolve this issue. She only had her gun out for 10 to 20 seconds. I don't know about that. I mean, that's somebody's estimate. That's uncontested, I believe, in the record, Your Honor. It's uncontested by the plaintiffs. But even 10 or 20 seconds, they have a gun pointed at you on your doorstep. And once she determined that the ---- Maybe the damages are not very large, but it's a violation of the home. Once she determined that the situation was secure, she and her agents were secure, she ---- As you can see now, she came to the door carrying a gun, had it out before she saw anything. Yes. Well, that's pretty shocking. Well, it may be shocking, but if the court ---- Well, it's, you know, it's unconstitutional. Even if the court determines that it is constitutional, we would strongly maintain on the facts and circumstances it was not. She's entitled to qualified immunity under Robinson. She didn't know it's unconstitutional? I believe that the court in Robinson in an en bloc opinion said, based on the state of the law, that it was unclear whether pointing a gun alone, without threats of violence or an attempt to fire the weapon, constituted excessive force. Well, that was Robinson. But did they make any law then? I believe that they did. They established in 2002 that the state of the law up to that time had been unclear. And in fact, they indicated that Fuller v. Vines led some support to the fact that pointing a gun only without ---- Does the context make some difference? Did not. Does the context. What was the Robinson context? The Robinson context was, I believe, an unarmed suspect there who had been ---- Was it his home? I believe that he was outside his home. I don't ---- I'm not sure if he was inside his home. But I don't ---- Some difference depends on context. Yes. You know, home is a castle. The government should know that. The FBI should know that. But I don't think it's an entirely castle, Your Honor, when you have a valid search warrant, and presenting people with a search warrant causes them to react in different ways. Well, of course it does. But you can't ---- That's what I mean. Because people may act strangely that you can go to their door with a gun. Well, I think the agents have a right to protect themselves and be prepared for all eventualities, for not only ---- Well, of course. How long does it take a person to pull a gun? To pull ---- I have no idea, Your Honor. Well, I thought they were well-trained. They could do it in a few seconds. Well, they can pull a gun if they're not down on the ground being assaulted. You think the man was going to come out shooting? I think that's the point of this entire discussion, Your Honor. They weren't sure. They didn't know what would happen, and they had a right to be prepared. Sounds like a jury question. Well, in this case, Your Honor, it would be clear that qualified immunity would apply here, based on the Robinson case. It shouldn't get to a jury. The other issues that are involved are the seizure of anti-tax literature, and that was the earlier discussion we had about paragraphs 22 and 21 of the warrant. And I use anti-tax literature because that is the phraseology that the plaintiffs have used. I don't ---- would not want to concede anything or let there be any adverse connotation drawn from that. With regard to Agent Phillips, he stated in his affidavit that he did not rely on paragraph, it would be for his particular search warrant, paragraph 22, as opposed to paragraph 21. He rather relied on paragraphs 18 through 20 of the warrant to search, to seize various evidence, as he discussed, including books with stickers indicating they related to global or promotional copies and also information that related to global vendors. But at any event, appellants have not challenged the basis for his seizure of the evidence in their opening brief and, therefore, are barred from seizing it now. With regard to Agent Lurvie, she did seize information pursuant to paragraph 21 of the warrant with regard to tax records, and she found that some of this material would constitute supporting work papers or documents that related to the preparation or, in fact, lack thereof of tax returns. But prior to seizing this information, she did contact an assistant United States attorney, and if the court finds that there was a constitutional violation, we would maintain that there was not because it was properly seized pursuant to the warrant. She should be entitled to qualified immunity based on her reliance on the advice of counsel. Counsel, reliance on the advice of counsel in and of itself is not sufficient to warrant the grain of qualified immunity, is it? It's not dispositive, but it's evidence of good faith, and there's nothing in this situation to indicate that she should not have relied on the assistant's advice with regard to the warrant. He was the assistant who had reviewed the warrant. She provided him with the facts at issue, the relevant facts, all the facts, and there was nothing to indicate in his opinion that should cause her to question the advice that she was given. So she relied on that advice in good faith. Finally, there was an issue regarding Agent Phillips' seizure of cash and valuables, which he found within a safe in the residence. He maintained that he took that information back to the IRS offices for safekeeping because of various circumstances. There was a substantial amount of currency, coins, and jewelry, and he believed that because the safe had been opened, it was small and could be stolen. The remote location of the home and the breakdown in communications regarding the security system, that there was some risk that this material could be stolen. He therefore took it back to the IRS office for safekeeping, and there's nothing to indicate that this was a constitutional violation or improper in any way. If the court does find that there was a constitutional violation, he should be entitled to qualified immunity. And I would note that with respect to the cases cited by appellants in their reply brief, saying that an inventory search or taking material for safekeeping is not permissible, the cases they cite generally refer to agents on the premises pursuant to a forfeiture warrant and not lawfully on the premises pursuant to a search warrant, which was what we have here. Agent Phillips was properly on the premises pursuant to the search warrant and properly open to safe pursuant to that warrant. Can I ask you a little bit more about the gun episode from looking at the agent's affidavit? My handgun was drawn during the initial approach. It's before she's even seen him. This safety precaution was followed based upon the fact that this search involved a residence. So as far as that goes, it sounds like any home you can approach with a gun. And the information we have obtained about Anderson's muscular build and use of growth hormones. If that's the combination you need to approach a house with a gun, it's fairly startling. I think that's not, Your Honor. Your Honor, the information she indicates about the resident, it's a common distinction to make a distinction between searching a residence and searching a business. Businesses are generally open to the public and can be surveilled. So on a home, it's better to go armed to a home with a gun out. I think that what she is saying is there is a greater risk of danger by searching a private home than a business which is open to surveillance and access. Then as to when she put it away, I hoisted my weapon shortly no more than 10 to 20 seconds after Anderson had stepped outside. Yes. Well, after he stepped outside, there are a few seconds, maybe minutes, when she's had it out, when he's seen it, when he stepped out. She forces him out with the gun out. The 20 seconds you're talking about is only after he stepped outside. So it's a little more time than you suggest. I believe it was the entire time of the residence. Well, no. The affidavit is 20 seconds after he had stepped out. So it isn't the entire time. But I believe it was a fairly short amount of time. They showed up at the residence. They asked him, requested him to step out and produce the unknown evidence. Well, at least going from the affidavit, I don't know. I don't know how you know. Well, we can differ about that, Your Honor. Have you got some other information on the record? No, Your Honor. But in any event, quote. Well, I mean, if you don't have any other information, I think this is pretty good. They suggest there's more than 20 seconds. Your Honors, I believe my time is up. Go ahead, Fisher. No. I would say in any event, if the Court, as I've reiterated before, finds that there was a constitutional violation, then qualified immunity would apply to Agent Lurvie. And that's certainly something that this Court and the district court can decide without sending the, and should decide without sending the issue to trial. Thank you very much, Ms. Wolfe. Thank you, Your Honors. First, I want to say that 29 years ago, I had a loaded gun pointed at me by a law enforcement agent, and I'll never forget it as long as I live. Counsel, that doesn't have anything to do with the facts in the record. We can't find your argument for the record. I would also like anybody who wonders about what it's like to have a gun pointed at them for 10 to 20 seconds. Do you have any responsive argument to this argument? Yes, I do. Excuse me, Your Honor. Proceed to it. Okay. You want to say something on qualified immunity? That it's ridiculous to suggest that there's any need to point a loaded weapon at somebody who walks out of their house. There were a dozen other agents, as many as 15, 12 to 15 agents were there with Agent Lurvie. Their guns were all drawn, and when Mr. Anderson stepped out, that's when the gun was pointed at his face for 10 to 20 seconds, and we now have the government's admission that that took place. That is outrageous. What's your response to opposing counsel's position that until the En Bonk case in Robinson, the law was not clearly established regarding use of drawn weapons? That's an incorrect statement of law, Your Honor, and that what the En Bonk court decided was that the law wasn't settled in 1995. That's what the En Bonk panel held in Robinson. Okay, so what's your view as to when the law was settled regarding pointing of a weapon at a suspect or the subject of a search warrant? What's your view as to when the law was settled regarding that issue? If there were any question about it, Your Honor, it was settled in 2000, and we noted actually the opinion that was eventually withdrawn, the panel opinion in Robinson, was published in 2000. But if it was withdrawn, then does that constitute settled law if an opinion is withdrawn? I think the absurdity of pointing a loaded weapon at an unarmed person who's no threat was settled. I do. I don't think any reasonable person could think it's okay to point a loaded weapon at somebody who's unarmed and poses no threat, particularly when they have a dozen other agents with them who are armed. Well, I understand that's your position, but I was just curious as to what the law said about it. What I think the law says about it that is clearest, Your Honor. Okay, tell me besides the withdrawn opinion in Robinson, what other jurisprudence was there to clearly establish this principle? There was a case that we didn't cite that was decided June the 23rd by another panel of this court. June 23rd of which year? Of this year, that referred to, it's called Mina v. The City of Simi Valley, which held that a lady who was held at gunpoint on February the 3rd, 1998 that it was settled law that pointing a gun at her was the use of excessive force. And I have the citation for that. Actually, all I have is a Westlaw cite on that one. And it's Mina, M-E-N-A, v. The City of Simi Valley. It was decided June the 23rd, 2003. And it's 2003-W-L, and then the page number is 214-360-12. And that held that just before 7 a.m. on February the 3rd, 1998, several officers executed a search warrant, a valid search warrant. And during the course of that search and seizure, Ms. Mina had a gun pointed at her, a loaded gun pointed at her, and it was held to be, along with other factors, excessive force. Now, the government made some statements that are interesting. Sixteen people have been indicted, convicted, or pled guilty in connection with, quote, this investigation. I don't know what investigation she's talking about, but I'd certainly like to know who the 16 people are so that we could pursue that statement that the government makes. But apparently it's not sufficient to confer finality on this proceeding for appellate review, according to the government. And Judge Rawlinson's questions about when, actually, the panel's questions about when are, well, six years from some date, maybe we'll get a chance. But what if there is no indictment here? It's been two and a half years. No indictment as to your client and to the other 70-some-odd thousand. Right, but since we have the other 16, why can't we get the search warrant affidavit or a redacted search warrant affidavit? And, again, there has been no explanation for why the search warrant affidavit cannot be produced in some redacted form. I just can't understand it. It's unprecedented. Unprecedented. It's not unprecedented, in my experience, for affidavits to be sealed. For 30 months? It's in connection with ongoing investigations. If they satisfy the district court judge that the release of the information would compromise their ongoing investigation. How that was done is my question, Your Honor, is how could the district judge be satisfied that we couldn't have a redacted There was never any discussion of that, even though I tried to precipitate some. It was just ignored, and it's still being ignored 30 months later. Even in another 30 months. And I'm thinking about the other people. We're talking about 70,000 people. Okay, 69,998 people. Their rights aren't going to be protected in any such proceeding. Even if the district court in this hypothetical criminal case grants suppression, that provides no protection for these 70,000 people's right to privacy and association. The concern that we had is that the search and seizure were undertaken for the purpose not of gathering evidence against LaMontilla or Anderson, but for use in targeting a bunch of individuals for investigation of tax liabilities because of their association with the Institute of Global Prosperity. That's the reason why the government did it, and that's why the government talks about the Anti-Injunction Act. But that's specifically prohibited. My understanding of the law is that the government is prohibited from utilizing searches and seizures to get names of people that it thinks ought to be audited because they express, quote, anti-tax sentiments. And I might note that the anti-tax literature sobriquet was selected by the agents, not by us. They're the ones who decided it was anti-tax literature, and accordingly, even though it wasn't on the warrant, which was amazingly broad as it was, still, the warrant had to be broadened further to seize mere literature because of the ideas that it contained, presumably. And it was paragraph 18 of the search warrant where the government uses prospective members. So, again, we did not come up with that term. It's actually noted on page 6 of our opening brief, footnote 12. We quote from that. And then Your Honor raised the point. I looked that up. Now, so these 60,000 people, according to the way the government sees it, and unless this panel reverses, have no rights. They can't protect their right to anonymity, notwithstanding the fact that in 2002, the Bible Watchtower people have a right to distribute their literature anonymously. I'm troubled by that, needless to say. Well, let me follow that up, Mr. Cohen. If the matter is under seal and if the government is not releasing the membership list, then what harm is there to these people? It seems to me that the harm you're really talking about is they don't want their name to be known to the Internal Revenue Service because they might use that information to investigate them for tax violations. But there's not any evidence that that's happened. Well, we don't know, but the government's invocation of the Anti-Injunction Act certainly suggests that's exactly what they intend to use the membership list for. What other purpose is this? My question is, you were talking about protecting their rights to anonymity. Yes. And at this point, there has been no disclosure of any of these people's names. I haven't heard that. My understanding is the government feels like it's justified in using this for tax collection activity. Otherwise, how can they invoke the Anti-Injunction Act? But again, we're doing this entirely on speculation because you can't give us any names and we don't know any. Well, we know that the government has taken the position that they can now use what was seized under the pretext of being evidence for future instrumentalities of some tax crimes under investigation by lamenteers. And they tell us that 16 people have been indicted and convicted. There's certainly no indication. I'm still wondering where the harm is to these other unknown, unnamed people. Well, I guess if I want to set up an organization, I want to recruit people to abolish the income tax, I want to be able to tell them, oh, by the way, your name is not going to go directly to the IRS. It's somebody who ought to be audited. But I guess I couldn't do that because the government can go ahead and seize the membership list, although I'm not aware of any case, and I've studied them, where this procedure has been approved. And everyone has been condemned. Thank you, Your Honor, for your patience. Could I clarify something, Your Honor? Go ahead. Just to make clear, when I mentioned the 16 people, that was in connection with an investigation of Global. And as I think I said on the record, I don't know the status of the investigation with regard to the particular appellants here. You understood that? That's fine. Thank you, counsel. The case just argued is submitted, and we will be in recess until 9 a.m. tomorrow morning.
judges: Noonan, Tallman, Rawlinson